IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ADAM TINCHER,

                           Plaintiff,

v.                                              CIVIL ACTION NO. 2:25-cv-00314

SOUTHERN ENERGY HOMES, INC.,

                           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Southern Energy Homes, Inc.'s Motion to Compel Arbitration and Stay All Proceedings, [ECF No. 8]. Plaintiff Adam Tincher timely filed his response, [ECF No. 10], to which Defendant replied, [ECF No. 18]. The matter is ripe for adjudication. For the reasons set forth below, the Motion to Compel Arbitration and Stay All Proceedings, **[ECF. No. 8]**, is **DENIED**. As a result, the previously ordered stay, **[ECF. No. 23]**, is **LIFTED**, and the parties shall proceed in accordance with the Amended Scheduling Order to be issued forthwith.

**I.    BACKGROUND**

On November 16, 2020, Plaintiff purchased a mobile home from Pinewood Mobile Home Sales, Inc. ("Dealer") in Mt. Nebo, West Virginia. [ECF No. 10-1 ("Pl.'s Aff."), at 1]. The purchase order form included Plaintiff's information, details about the make and model of the mobile home, the purchase price, a brief summary of the Dealer's and Plaintiff's respective responsibilities, and signature lines for the Dealer's representative and Plaintiff. [ECF. No. 8-1, Ex. A-1]. Plaintiff also

completed a Consumer Loan Note for a preferred lender, which is no longer material to this case. [Pl.'s Aff., at 1; ECF Nos. 19, 22]. There was no warranty documentation provided at the time of purchase, but Plaintiff states that the Dealer's representative assured him the home was covered by a one-year warranty. [Pl.'s Aff., at 1].

The mobile home was constructed at Defendant's manufacturing facility in New Tazwell, Tennessee, before it was delivered to the Dealer for transportation to Plaintiff's address in Fenwick, West Virginia. [ECF No. 8-1, Ex. A ("Capps' Decl. 1"), at 2]. After moving in, Plaintiff noticed multiple defects and states that he "reported those problems directly to Pinewood at their dealership either in person or by phone." [Pl.'s Aff., at 2]. Plaintiff further asserts that he never reported these issues to Defendant and never made a written claim to anyone. *Id.* at 2.

Plaintiff also contends that no warranty documents were present in the mobile home upon delivery. *Id.* at 2–3. He claims he saw a manual on the countertop bearing the title "Giles Home Owner's Manual & Installation Guide," which he placed in a drawer without reading. *Id.* Plaintiff states that the first time he "searched for and became aware of the alleged arbitration clause was when the Defendant filed its motion to compel arbitration." *Id.* at 3. Still, he contends that the manual never contained a warranty or corresponding arbitration provision.[1] *Id.*

Conversely, Defendant's representative, a Custom Care Manager from the New Tazwell facility, states that Defendant placed a homeowner's manual containing a one-year limited warranty and binding dispute resolution agreement ("BDRA") inside one of Plaintiff's kitchen drawers during construction. [Capps' Decl. 1, at 2]. The representative also states that Plaintiff notified both the Dealer and Defendant of the issues he had with the home. *Id.* at 2. Moreover, the

---

[1] Plaintiff concedes he located an arbitration form in his manual signed by one of Defendant's representatives that Plaintiff never signed. [Pl.'s Aff., at 3]. However, this is a wholly separate document that Defendant agrees is not at issue in this case. [ECF No. 18-1 ("Capps' Decl. 2"), at 3].

representative asserts that "repairs were requested and performed by [Defendant] pursuant to" Defendant's written warranty, and Defendant also shipped parts and materials to West Virginia for warranty services. *Id.*

On February 25, 2025, Plaintiff initiated this action in the Circuit Court of Nicholas County, West Virginia. On April 17, 2025, Plaintiff amended his Complaint to properly name Southern Energy as the defendant home manufacturer. [ECF No. 1-1]. The Amended Complaint sets forth seven claims: (1) common law negligence; (2) unjust enrichment; (3) breach of contract, including the covenant for good faith and fair dealing; (4) revocation of acceptance; (5) violation of the Magnuson-Moss Warranty Act; (6) breach of the implied warranty of merchantability; and (7) breach of the implied warranty of fitness. [ECF No. 1-1, at 27–39]. On May 12, 2025, Defendant removed the action to this court. [ECF No. 1].

On July 1, 2025, Defendant filed a Motion to Compel Arbitration and Stay All Proceedings, asserting that Plaintiff is bound to arbitrate this dispute. [ECF. No. 8]. Plaintiff responded, arguing that arbitration is improper because he never entered into an agreement to arbitrate with Defendant. [ECF No. 10]. Defendant replied. [ECF No. 18]. On December 11, 2025, this court granted Defendant's Motion for Stay of Litigation and Protective Order, [ECF No. 23], pending resolution of the Motion to Compel.

**II.    LEGAL STANDARD**

The Federal Arbitration Act ("FAA") embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A court must give "due regard" to this federal policy favoring arbitration and should resolve "ambiguities as to the scope

of the arbitration clause itself [] in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989).

The FAA requires district courts to determine whether the parties agreed to arbitrate pursuant to state substantive law. *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). The Fourth Circuit has set forth a four-factor test that, if demonstrated by the litigant, allows him to compel arbitration:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmoving party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). District courts are to apply the summary judgement standard, *id.*, and the defendant bears the burden of "establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017).

If the court determines that an arbitration agreement exists, it must enforce the agreement and stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration" under the agreement. 9 U.S.C. § 3. As the Fourth Circuit has observed, "[t]his stay-of-litigation provision is mandatory," and a district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

### III. DISCUSSION

The parties in this case dispute only the second element required to compel arbitration:

the existence of a valid agreement to arbitrate under state law.[2] I FIND that there is no such agreement, and arbitration shall not be compelled. Put simply, Defendant cannot use equitable estoppel as a mechanism for contract creation and wholly bypass the predicate steps required for formation under state law. It is Defendant's burden to demonstrate that the parties have a contract to arbitrate, and it has not carried that burden here.

Parties must agree to arbitrate their disputes as one "cannot be forced into arbitration." *Rowland*, 993 F.3d at 258. The FAA provides that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While a court is required to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration," *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (internal quotation marks omitted), that presumption "can't override[ ] the principle that a court may submit to arbitration only those disputes the parties have agreed to submit." *Weckesser v. Knight Enters. S.E.*, LLC, 735 F. App'x. 816, 821 (4th Cir. 2018) (internal quotation marks omitted). "Arbitration is 'a matter of consent, not coercion,' and federal arbitration policy does not alter that maxim." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 385–86 (4th Cir. 2013) (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 479). "The 'touchstones of arbitrability analysis' are the 'twin pillars' of the parties' 'consent and intent' to arbitrate." *Id.* (quoting *Peabody Holding Co. v. United Mine Workers of Am.*, 665 F.3d 96, 103 (4th Cir. 2012)).

The FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen*

---

[2] West Virginia law provides that "the law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation." *Gen. Elec. Co. v. Keyser*, 166 W. Va. 456, 461, 275 S.E.2d 289, 292 (1981) (cleaned up). The parties do not dispute that West Virginia law is applicable to resolve the question of arbitrability.

5

*LLP v. Carlisle*, 556 U.S. 624, 630 (2009). "[T]raditional principles of state law allow a contract to be enforced by or against nonparties . . . ." *Id.* at 631 (internal citation omitted). West Virginia law recognizes five common-law theories under which a non-signatory to a contract may nonetheless be bound by its provisions: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 440, 781 S.E.2d 198, 217 (2015). Accordingly, "if a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law" then the court must stay the proceeding according to Section 3 of the FAA. *Arthur Anderson LLP*, 556 U.S. at 631.

### A. Equitable Estoppel is Inapplicable

Defendant argues that Plaintiff is bound to arbitrate not as a signatory to any agreement, but under a theory of equitable estoppel. Defendant agrees that the only contractual relationship it could have with Plaintiff is through the warranty and associated BDRA, [ECF No. 18, at 7], both of which Defendant allegedly included in a manual left in Plaintiff's mobile home. However, Defendant repeatedly calls the warranty and BDRA a contract without setting forth the requisite steps that made it one.

Equitable estoppel "'recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.'" *Bayles v. Evans*, 243 W. Va. 31, 41, 842 S.E.2d 235, 245 (2020) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). Defendant argues that because Plaintiff received warranty services and advanced warranty claims in this case, he should be estopped from "'cherry-pick[ing] beneficial contract terms while ignoring other provisions that do not benefit [him] . . . such as the arbitration clause." *Id.* (quoting

6

21 Williston on Contracts § 57:19 (4th ed. 2019)); [ECF No. 8, at 11]. There are two critical flaws in Defendant's argument: (1) it presupposes the existence of an underlying agreement and (2) equitable estoppel is not a contract creation device—it is an equitable doctrine that allows, "in an appropriate case a nonsignatory [to] enforce, or be bound by, an arbitration provision *within a contract* . . . ." *Int'l Paper Co.*, 206 F.3d at 416–17 (emphasis added). This means that there must first be a contract that exists independent of equitable estoppel.

Under West Virginia law, "'a non-signatory cannot be bound to arbitrate unless it is bound under traditional principles of contract and agency law to be akin to a signatory of the *underlying agreement*.'" *Bayles*, 243 W. Va. at 40, 842 S.E.2d at 244 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Clean Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (emphasis added) (citation modified)). Equitable estoppel for benefits received requires the existence of a circumstance where "the nonsignatory *knowingly exploits the contract* containing the arbitration clause . . . ." *Id.* at 42, 842 S.E.2d at 246 (emphasis added). Whether equitable estoppel applies is a fact-intensive inquiry and requires an analysis of "the relationships of persons, wrongs and issues, in particular whether the claims . . . [asserted are] intimately founded in and intertwined with the *underlying contract* obligations." *Id.* (quoting *Choctaw Gen. Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (emphasis added)). Oftentimes, equitable estoppel is used to bind third-party nonsignatories—not two purported contracting parties, neither of which have formally executed *any* agreement together. *Id.* at 40, 842 S.E.2d at 243–44; *Dye v. Santander Consumer USA Inc.*, Civ. No. 1:23-CV-45, 2024 WL 251148, at *2 (N.D. W. Va. Jan. 23, 2024); *Int'l Paper Co.*, 206 F.3d at 416–17.

Defendant argues that by requesting and receiving warranty services and suing for warranty claims, Plaintiff bound himself to the provisions of the warranty document, which includes an

7

arbitration clause. In other words, Defendant argues that Plaintiff embraced a contract containing an arbitration clause by seeking benefits from Defendant's warranty, which it argues constitutes a contract with the BDRA. [ECF No. 8, at 11; ECF No. 18, at 5–7]. However, this argument ignores state contract law, which requires equitable estoppel to be anchored to an underlying agreement. Equitable estoppel does not obviate the need for valid contract *creation* when one never previously existed at all. Defendant has pointed to its warranty and BDRA that it allegedly left in Plaintiff's mobile home, but Defendant has failed to explain how and when those documents became a binding contract that Plaintiff could "embrace" for the purposes of equitable estoppel. In short, a non-signatory cannot be bound by a purported contract before it ever exists.

Foundational requirements of contract law require notice, an opportunity to view terms, and mutual assent.[3] Defendant has not demonstrated any of these elements. The parties do not dispute that Defendant was not a party to the purchase agreement. Defendant's warranty information was not included in the purchase agreement. Plaintiff did not have notice of Defendant's warranty and BDRA at the time of the purchase agreement. Plaintiff, upon his own inquiry, received an oral assurance of a warranty from the Dealer. Then, Defendant allegedly placed its warranty document and BDRA inside Plaintiff's mobile home that was delivered at some point after the completed purchase transaction with the Dealer.

---

[3] In West Virginia, mutual assent is a necessary component of contract formation, and this mutuality requires "'that there be a proposal or offer on the part of one party and an acceptance on the part of the other.'" *Bluestem Brands, Inc. v. Shade*, 239 W. Va. 694, 699, 805 S.E.2d 805, 810 (2017) (quoting *New v. GameStop, Inc.*, 232 W. Va. 564, 572–73, 753 S.E.2d 62, 70–71 (2013)). "'A meeting of the minds of the parties is a sine qua non of all contracts.'" *Id.* at 701, 805 S.E.2d at 812 (quoting Syl. Pt. 1, *Martin v. Ewing*, 112 W. Va. 332, 164 S.E. 859 (1932)). Specifically, these principles "relate[] to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008); *McCoy v. Southern Energy Homes, Inc.*, No. 1:09-1271, 2012 WL 1409533, at *8 n.8 ("'[T]he UCC has not obviated the basic requirement of a meeting of the minds to form a contract.'" (quoting *Harman Invs., Ltd. V. Shah Safari, Inc.*, No. C10-0216RLS, 2010 WL 3522517, at *2 (W.D. Wash. Sept. 7, 2010))).

In an affidavit, Plaintiff also disputes that Defendant's warranty and BDRA were included within the manual left in his home. [Pl.'s Aff., at 3]. And the evidence does not further support that Plaintiff ever knew about Defendant's warranty and BDRA. Defendant's warranty required Plaintiff to invoke it by submitting a written notice. [ECF No. 18-1, Ex. B]. The parties do not dispute that there was no written notice. Plaintiff states in his affidavit that he simply went to or called the dealership and sought repairs pursuant to the oral assurance he received from the Dealer at the time of purchase. [Pl.'s Aff., at 2]. Plaintiff also states he never contacted Defendant directly about issues, *id.*, and Defendant has not shown or expressly argued that he did. *See* [Capps' Decl. 1, at 2; Capps' Decl. 2, at 3]. Overall, these are not facts supporting notice and a meeting of the minds.

Defendant effectively asks this court to compel arbitration in an instance where Defendant has not shown that Plaintiff ever knew—actually or constructively—about Defendant's warranty and BDRA.[4] Defendant conflates mutual assent with the concept of embracing a contract for purposes of equitable estoppel. It is true that seeking warranty services can be both an acceptance of a warranty offer and conduct that embraces a contract for equitable estoppel. However, acceptance cannot be implied where there is evidence that Plaintiff's requests were not pursuant to Defendant's alleged warranty and BDRA. And there must be valid acceptance before an argument can be made for equitable estoppel, which requires one to "knowingly exploit[] the

---

[4] I recognize, as Defendant argues, that federal regulations provide for manufacturers to "make a copy of [their] manual available online so that a consumer may review it before buying their home." [ECF No. 18, at 12]. However, Defendant does not argue, nor is there evidence to support, that Plaintiff knew about this online information or was made aware of it. This is distinctly different from the case where a plaintiff is given a contract and chooses not to read it.
    Additionally, Mr. Capps submitted inconsistent statements in his declarations. More specifically, Mr. Capps stated in his first declaration that "Southern Energy provided in the kitchen drawer of the Home a homeowner's manual that sets forth [the Warranty and BDRA]." [Capps' Decl. 1, at 2]. However, in his second declaration, after Plaintiff stated he found his manual on his countertop, Mr. Capps stated "Southern Energy provides in the kitchen drawer, cabinet or counter of the Home a copy of the Homeowner Manual that sets forth [the Warranty and BDRA]." [Capps' Decl. 2, at 2].

9

contract containing the arbitration clause . . . ." *Bayles*, 243 W. Va. at 42, 842 S.E.2d at 246. One cannot knowingly exploit a contract if they did not even have sufficient notice for mutual assent to form a contract to begin with.

The mere request and receipt of warranty services is insufficient proof because that conduct was not clearly in reference to Defendant's alleged warranty guaranty.[5] In fact, the evidence shows the contrary: that Plaintiff's conduct was pursuant to the Dealer's oral assurance.[6] Notably, this finding does not create a subjective or arbitration-specific knowledge requirement as Defendant contends.[7] Many similar cases at this stage have asked not whether a plaintiff had subjective knowledge of the arbitration provision, but whether they had notice and an opportunity to view it such that they would have constructive knowledge of it.[8] Defendant has not shown that here.

---

[5] Defendant's argument about Plaintiff's warranty claims in this lawsuit suffers from the same deficiencies. While suing based on warranty is one way to embrace a contract for equitable estoppel, Defendant must prove there was a contract. Considering the other facts of this particular case, I do not find that the warranty claims by themselves are evidence that Plaintiff knew about Defendant's warranty and BDRA such that Plaintiff somehow acted pursuant to it.

[6] The oral assurance is what sets this case apart from Defendant's argument for *Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131 (Ala. 2000). [ECF No. 18, at 8]. In that case, the court found that the plaintiffs were bound to arbitrate because (1) the defendant's affidavit was evidence that the plaintiffs accepted warranty benefits with an arbitration provision and (2) the plaintiffs sued on a theory of express warranty, and "[t]he only express warranty included in the evidentiary materials is the one containing the arbitration provisions." *Ard*, 772 So. 2d at 1134. Critically, the court's decision rested on the "absence of evidentiary materials in opposition . . . ." *Id.* In this case, there is opposing evidence: Plaintiff's affidavit stating that he sought warranty benefits pursuant to the Dealer's oral representation.

[7] I also realize that federal regulations state that "[t]he manufacturer shall provide the consumer manual by placing a manual in each such manufactured home before the manufactured home leaves the manufacturing plant." 24 C.F.R. § 3282.207(b). Contrary to Defendant's argument, however, my ruling is in consonance with these federal regulations and does not create an arbitration-specific knowledge requirement. While regulations mandate that manuals, including warranty information, be placed in a clear and conspicuous disclosure and location, they also—as Defendant points out—require "that warrantors make the warranty available to the consumer at the point of sale." 15 U.S.C. § 2302; 16 C.F.R. § 702.3. Defendant also slightly mischaracterizes the obligations of manufacturers by stating that they "can satisfy this requirement by either providing a copy to [the] home's retailer or by posting a copy of the warranty online." [ECF No. 18, at 15]. While the regulations contemplate those means as a way for manufacturers to provide information to their retail sellers for retailers to make the information available to buyers, the regulations do not stand for the proposition that manufacturers can enforce their warranties against purchasers who never received the information from the retailers. To the contrary, the regulations explicitly reflect the importance of consumers having access to warranty information prior to their purchase. *See* 15 U.S.C. § 2302; 16 C.F.R. § 702.3.

[8] *Brown v. CMH Mfg., Inc.*, No. 2:13-31404, 2014 WL 4298332, at *7 (S.D. W. Va. Aug. 29, 2014); *Schultz v. Dan Ryan Builders, Inc.*, Civ. No. 3:12-CV-15, 2013 WL 3365244, at *11 (N.D. W. Va. July 3, 2013); *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 444, 752 S.E.2d 586, 598 (2013); *New v. GameStop, Inc.*, 232 W. Va. 564, 578, 753 S.E.2d 62, 76 (2013); *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 732 (4th Cir. 2025); *DeMidio v. REV Recreation Grp., Inc.*, No. 1:17-CV-326, 350, 2018 WL 1744958, at *9 (N.D. Ind. Apr. 10, 2018); *Citizens Telecomm. Co of W. Va. v. Sheridan*, 239 W. Va. 67, 74–75, 799 S.E.2d 144, 151–52 (2017).

Accordingly, Defendant has not carried its burden by proving that the parties have an agreement to arbitrate under West Virginia law. Equitable estoppel requires an underlying contract to operate upon, and Defendant has not shown that one existed.

## IV. CONCLUSION

Defendant's Motion to Compel Arbitration and Stay All Proceedings, **[ECF No. 8]**, is **DENIED**. The court **DIRECTS** the parties to proceed in accordance with the Amended Scheduling Order that will follow. The court **ORDERS** that the stay of discovery previously imposed, **[ECF NO. 23]**, be **LIFTED** from the docket.

The court further **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 11, 2026

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE